WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

VALERIE C. GONZALES,                          )
                                              )
                        Plaintiff,            )
                                              )
            vs.                               )
                                              )
CAROLYN W. COLVIN, acting Commissioner )
of Social Security,                           )
                                              )        No. 2:13-cv-0849-HRH
                        Defendant.            )
_____)

O R D E R

     This is an action for judicial review of the denial of disability benefits under Titles

II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.  Plaintiff has timely

filed her opening brief,[1] to which defendant has responded.[2]     Oral argument was not

requested and is not deemed necessary.

Procedural Background

     Plaintiff is Valerie C. Gonzales.  Defendant is Carolyn W. Colvin, acting Commis-

sioner of Social Security.

_____

[1]Docket No. 22.

[2]Docket No. 25.

-1-

Plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled on July 18, 2009. Plaintiff alleged that she was disabled because of back pain, arthritis, migraine headaches, and obesity. Plaintiff's applications were denied initially and upon reconsideration. After a hearing on July 28, 2011, an administrative law judge (ALJ) denied plaintiff's claims. On March 1, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's September 23, 2011 decision the final decision of the Commissioner. On April 26, 2013, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

<u>General Factual Background</u>

Plaintiff was born on September 30, 1976. She was 34 years old at the time of the hearing. Plaintiff attended eleven years of school but does not have a high school diploma or GED. Plaintiff is married and lives with her husband, adult stepson, and eight-year old granddaughter. Plaintiff's past relevant work was as a dispatcher.

<u>The ALJ's Decision</u>

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2011."[3]

---

[3]Admin. Rec. at 22.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]  At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since July 18, 2009, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: major depressive disorder, obesity, and degenerative disc disease of the lumbar spine...."[6]

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 22.

[6]Admin. Rec. at 22.

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7]  The ALJ considered listing 1.04, disorders of the spine, and listing 12.04, affective disorders.[8]  The ALJ considered whether plaintiff satisfied the "paragraph B" criteria and concluded that she did not because she had no restrictions as to her activities of daily living, no difficulties as to social functioning, and only moderate difficulties with regard to concentration, persistence, or pace.[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can stand and walk for one hour at a time, four hours total in an eight hour work day.  She can sit for six hours; and is limited to frequent climbing of ramps and stairs, as well as balancing, and stooping.  [Plaintiff] can occasionally climb ladders, ropes, and scaffolds; and occasionally kneel, crouch, and crawl.  She

---

[7]Admin. Rec. at 22.

[8]Admin. Rec. at 23.

[9]Admin. Rec. at 23-24.

should avoid concentrated exposure to workplace hazards. She is also limited to simple, repetitive tasks.[10]

In assessing plaintiff's RFC, the ALJ considered plaintiff's statements concerning "pain, numbness, and other symptoms" but found plaintiff's "statements regarding intensity, frequency, and duration, less than fully credible."[11] The ALJ first noted that the April 2009 x-rays of plaintiff's lumbar spine "revealed evidence of old, slight compression deformities in the lower thoracic spine, but no acute findings … to indicate an etiology for back pain"[12] and that no objective findings were reported the two times plaintiff presented to the emergency room in 2009 complaining of back pain.[13] The ALJ then discussed plaintiff's April 2009 MRI, emphasizing that this MRI showed "no evidence of nerve root displacement or compression."[14]

---

[10]Admin. Rec. at 24.

[11]Admin. Rec. at 25.

[12]Admin. Rec. at 25.

[13]Admin. Rec. at 25. Plaintiff actually presented to the emergency three times in 2009 complaining of back pain. On March 20, 2009, the physical exam of plaintiff's back revealed that she had "[n]ormal alignment. TTP bilat[eral] lumbar paraspinals and L. buttock. pain with flexion > 30 degrees and pain with extension past vertical; no pain with lateral bends." Admin. Rec. at 282. On April 9, 2009, the physical exam of plaintiff's back showed a decreased range of motion and muscle spasms. Admin. Rec. at 295. On November 23, 2009, plaintiff's physical exam showed that she was in mild distress, limping, and that her back had "[n]ormal alignment. Midline tenderness to palpation LS spine. TTP Lt. LS paraspinas." Admin. Rec. at 348.

[14]Admin. Rec. at 26. The April 27, 2009 MRI of plaintiff's lumbar spine showed that
(continued...)

The ALJ found plaintiff's statement that she needs to lay down five out of eight hours per day[15] less than credible because "the records do not show atrophy or significant deconditioning.  She remains neurologically intact although she demonstrated positive straight leg raising."[16]  The ALJ also stated that plaintiff "testified her last job ended because she was allowed to perform ... it while using narcotic medication.  She testified that she had never been counselled [sic] or reprimanded over the quality of her work."[17]

_____

[14](...continued)
> [a]t the L4-L5 level, there is degenerative disk, disk bulge and small broad-based midline disk protrusion with annular tear contacting the L5 nerve roots bilaterally.  No evidence of nerve root displacement or compression.  Facet and ligamentum flavum hypertrophy at this level without spinal canal or foraminal stenosis.  At the L5-S1 level, there is severe degener-ative disk disease and a moderate broad-based midline disk protrusion with annular tear contacting the S1 nerve roots bilaterally.  No evidence of nerve root displacement or com-pression.  Mild facet hypertrophy at this level.  There is mild foraminal stenosis on the right.

Admin. Rec. at 313.

[15]At the hearing, plaintiff testified that she needs to lay down for about five hours per day between 9 a.m. and 5 p.m.  Admin. Rec. at 57.

[16]Admin. Rec. at 26.

[17]Admin. Rec. at 26.

The ALJ considered Dr. Ahmed's opinion[18] but did not state what weight she was giving his opinion.[19]  The ALJ gave great weight[20] to Drs. Pereyra's[21] and Fina's[22] opinions. The ALJ gave some, but not great, weight[23] to Dr. Aking's opinion.[24]

─────────────────

[18]On January 16, 2010,  after examining plaintiff, Omar Ahmed, M.D., opined that plaintiff could stand/walk for 4 hours; could sit for 4 hours; needed to use an assistive device; could frequently lift 10 pounds and occasionally lift 20 pounds; could frequently climb, stoop, and crawl; could occasionally kneel and crouch; had no limitations as to reaching, handling, fingering, and feeling; could not work around heights and moving machinery; and had no limitations as to working around extremes in temperatures, dust/fumes/gas, and excessive noise.  Admin. Rec. at 360-362.

[19]Admin. Rec. at 26-27.

[20]Admin. Rec. at 28.

[21]On January 19, 2010, Rosalia Pereyra, Psy.D, opined that plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions and was moderately limited in her ability to be aware of normal hazards and take appropriate precautions but otherwise was not significantly limited in her mental capacity.  Admin. Rec. at 363-364.  Pereyra opined that plaintiff was "capable of engaging in unskilled repetitive work on a sustained basis."  Admin. Rec. at 365.  Dr. Pereyra also opined that plaintiff had no restriction of activities of daily living; no difficulties in maintaining social functioning; and moderate limitations in maintaining concentration, persistence, and pace. Admin. Rec. at 377.

[22]On February 18, 2010, Charles Fina, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 4 hours; sit for 6 hours; was unlimited in her ability to push/pull; could frequently climb ramp/stairs, balance, and stoop; could occasionally climb ladder/rope/scaffolds, kneel, crouch, and crawl; and should avoid concentrated exposure to hazards.  Admin. Rec. at 382-385.

[23]Admin. Rec. at 28.

[24]Rodd Aking, M.D., was plaintiff's primary care physician but his treatment notes are not in the record.  On July 28, 2011, Dr. Aking opined that plaintiff could occasionally
(continued...)

At step four, the ALJ found that plaintiff "is unable to perform any past relevant work...."[25]

At step five, the ALJ found that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."[26]   The ALJ relied on the testimony of the vocational expert who testified that plaintiff could work as a general office clerk or cashier.[27]

The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from July 18, 2009, through the date of this decision...."[28]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of

---

[24](...continued)
lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk less than 2 hours per day; sit less than 6 hours per day; needs a hand-held assistive device for ambulation; needs to alternate sitting/standing every half hour; can never climb, stoop, kneel, crouch, or crawl; can occasionally balance; has no limitations as to handling, fine manipulation, feeling, or reaching; and should avoid working around heights and moving machinery.  Admin. Rec. at 617-619.

[25]Admin. Rec. at 28.

[26]Admin. Rec. at 29.

[27]Admin. Rec. at 70-72 (testimony of George Bluth, vocational expert).

[28]Admin. Rec. at 30.

the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  Id.  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  Id.  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'"  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in giving Dr. Aking's opinion little weight. On July 28, 2011, Dr. Aking, who was plaintiff's primary care physician, opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk less than 2 hours per day; sit less than 6 hours per day; needs a hand-held assistive device for ambulation; needs to alternate sitting/standing every half hour; can never climb, stoop,

kneel, crouch, or crawl; can occasionally balance; has no limitations as to handling, fine manipulation, feeling, or reaching; and should avoid working around heights and moving machinery.[29]  Dr. Aking noted that his opinion was based on the fact that plaintiff "has 3 small disc bulges (objective) with subjective findings of severe pain."[30]

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff argues that the ALJ was required to give clear and convincing reasons for rejecting Dr. Aking's opinion because his opinion was not contradicted by another physician's opinion.  This argument fails because Dr. Aking's opinion was contradicted by

---

[29]Admin. Rec. at 617-619.

[30]Admin. Rec. at 619.

both examining Dr. Ahmed's opinion[31] and non-examining Dr. Fina's opinion.[32]   Dr. Ahmed and Dr. Fina both found plaintiff less restricted than Dr. Aking.  Thus, the ALJ was not required to provide clear and convincing reasons for rejecting Dr. Aking's opinion.  The ALJ was only required to give specific and legitimate reasons for rejecting Dr. Aking's opinion.

The ALJ gave three reasons for rejecting Dr. Aking's opinion:  1) "the medical evidence of record does not support a finding that [plaintiff] cannot sit, stand, and walk for a combined eight hours during a normal workday[;]" 2) "Dr. [A]king's narrative recounted [that plaintiff] had three small disc bulges (objective) with subjective findings of severe pain, but did not offer any other explanations for such significant physical restrictions;" and 3) "[a]t the time Dr. [A]king offered his assessment, [plaintiff] reported that her pain was only 6/10, and that it was infrequent."[33]

Plaintiff argues that the first reason given by the ALJ, that "the medical evidence of record does not support a finding that [plaintiff] cannot sit, stand, and walk for a combined eight hours during a normal workday,"[34] is nothing more than the ALJ's medical opinion,

---

[31]Admin. Rec. at 360-362.

[32]Admin. Rec. at 382-385.

[33]Admin. Rec. at 28.

[34]Admin. Rec. at 28.

an opinion that the ALJ is not qualified to give. An ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician[.]" Gonzalez Perez v. Sec. of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987). Moreover, plaintiff argues that the ALJ's opinion was wrong because the medical evidence supports the limitations assessed by Dr. Aking. Plaintiff points out that her MRI results showed marked disc space narrowing and bulging discs,[35] which she contends are medically determinable impairments reasonably expected to account for her symptoms.

The court is not convinced that this was an improper medical opinion expressed by the ALJ. Rather, it appears to be the ALJ's assessment of the medical evidence, a task that the ALJ is required to perform. See 20 C.F.R. § 416.945(a)(3).

Plaintiff argues that the second reason given by the ALJ, that "Dr. [A]king's narrative recounted [that plaintiff] had three small disc bulges (objective) with subjective findings of severe pain, but did not offer any other explanations for such significant physical restrictions[,]"[36] was also not legitimate. Plaintiff argues that the ALJ could not legitimately reject Dr. Aking's opinion because he did not offer explanations for plaintiff's restrictions while at the same time accepting Dr. Fina's opinion, which was also unsupported. Dr. Fina offered little explanation on the RFC form he completed to support

---

[35] Admin. Rec. at 313.

[36] Admin. Rec. at 28.

his opinion, and he did not indicate what medical evidence he reviewed to reach his opinion.[37]   Plaintiff insists that it was inconsistent for the ALJ to give Dr. Fina's unsupported opinion great weight while giving Dr. Aking's opinion little weight because he did not explain the bases for his opinion.

This was a legitimate reason to reject Dr. Aking's opinion.   An ALJ must evaluate a physician's explanations for his opinion, and the weight given to an opinion depends on the strength of such explanations.  See 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion").   The only explanation Dr. Aking provides for his opinion is that plaintiff has three small disc bulges. This is insufficient support for a medical opinion that would render plaintiff disabled.

Plaintiff also seems to suggest that the ALJ relied solely on Dr. Fina's opinion to justify the rejection of Dr. Aking's opinion.    Had the ALJ done so it would have been improper because "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."   Lester, 81 F.3d at 831.  But, here, the ALJ gave other reasons for rejecting Dr. Aking's opinion and she also relied on Dr. Ahmed's opinion.  It may have been inconsistent for the ALJ to reject Dr. Aking's opinion and credit Dr. Fina's,

---

[37]Admin. Rec. at 382-385.

but that does not mean that the ALJ could not legitimately reject Dr. Aking's opinion because it was, in fact, unsupported.

Plaintiff does not address the other reason given by the ALJ for rejecting Dr. Aking's opinion, which was that "[a]t the time Dr. Aking offered his assessment, [plaintiff] reported that her pain was only 6/10, and that it was infrequent."[38] But, this was not a legitimate reason to reject Dr. Aking's opinion. The record does show that on July 22, 2011, plaintiff reported that her "pain is infrequent, dull, aching, throbbing, stabbing pain which is worse with sitting, standing, and walking" and she rated her pain as a 6 on a scale of 10.[39] But, July 22, 2011 was the only time that plaintiff reported that her back pain was infrequent. Throughout the rest of the record, she complained of constant pain that was usually more severe than 6/10. For example, in April 2011, she reported to Dr. Zaveri[40] that her pain was constant,[41] in May 2011, she reported that her pain was elevated over the past month,[42] and in June 2011, she reported that her pain was 8/10.[43]

---

[38]Admin. Rec. at 28.

[39]Admin. Rec. at 636.

[40]Minesh Zaveri, D.O., began treating plaintiff for pain on June 30, 2010.  Admin. Rec. at 459-461; 483-524; & 630-661.

[41]Admin. Rec. at 642.

[42]Admin. Rec. at 640.

[43]Admin. Rec. at 638.

The ALJ gave two specific and legitimate reasons for rejecting Dr. Aking's opinion. Thus, her error as to the other reason may have been harmless. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (harmless error applies where some of the reasons the ALJ relied on to reject evidence are invalid).  An error is harmless if there remains substantial evidence supporting the ALJ's conclusions, and the error does not negate the validity of the ALJ's ultimate conclusion. Id.  at 1162-63.

Plaintiff argues the ALJ's RFC is not supported by substantial evidence because Dr. Fina's opinion cannot constitute substantial evidence.  Plaintiff argues that Dr. Fina's opinion is not substantial evidence because his opinion was formed a year and a half before the ALJ's decision, because he did not indicate what evidence he reviewed to reach his opinion, and because he gave little to no explanation for his opinion.

But even if Dr. Fina's opinion were not substantial evidence to support the ALJ's RFC,  the ALJ's error as to Dr. Aking's opinion was still harmless.  The ALJ discussed Dr. Ahmed's opinion, which was based on his examination of plaintiff, and his opinion provides substantial evidence to support the ALJ's RFC.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant).

Plaintiff next argues that the ALJ erred in finding her pain and symptom statements less than credible.  "In evaluating the credibility of a claimant's testimony regarding

subjective pain, an ALJ must engage in a two-step analysis." Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if []he gives 'specific, clear and convincing reasons' for the rejection." Id. (quoting Lingenfelter, 504 F.3d at 1036).  An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude [that] the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (9th Cir. 1991)).

The ALJ gave three reasons for finding plaintiff's pain and symptom testimony less than credible.  First, the ALJ found that the objective medical evidence did not support plaintiff's statements.[44]  Second, the ALJ found plaintiff's statement that she needs to lay down five out of eight hours per day incredible because "the records do not show atrophy or significant deconditioning.  She remains neurologically intact although she demon-

---

[44]Admin. Rec. at 25-26.

strated positive straight leg raising."[45]  Thirdly, the ALJ stated that plaintiff "testified her last job ended because she was allowed to perform ... it while using narcotic medication. She testified that she had never been counselled [sic] or reprimanded over the quality of her work."[46]

Plaintiff argues that the first reason given by the ALJ, that her pain and symptom statements were not supported by the medical evidence, was not a clear and convincing reason because the ALJ did not explain how the medical evidence detracted from her credibility.  The ALJ noted that the April 2009 x-rays of plaintiff's lumbar spine showed "no acute findings ... to indicate an etiology for back pain", that no objective findings were reported the two times plaintiff presented to the emergency room in 2009 complaining of back pain, and that plaintiff's 2009 MRI of her lumbar spine showed "no evidence of nerve root displacement or compression."[47] But, plaintiff argues that the ALJ did not explain how this medical evidence made plaintiff's pain and symptom statements less than credible.

The Social Security regulations provide that "[i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence

---

[45]Admin. Rec. at 26.

[46]Admin. Rec. at 26.

[47]Admin. Rec. at 25-26.

and other evidence." 20 C.F.R. § 404.1529(a).  More specifically, the ALJ may "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you."  Id. § 404.1529(c)(4). Defendant argues that all the ALJ did here was resolve conflicts between plaintiff's statements and the rest of the evidence.

Plaintiff disputes that there were any "inconsistencies" for the ALJ to resolve. Plaintiff acknowledges that at times her pain decreased following certain treatment, such as radiofrequency ablation,[48] but she argues that the record does not suggest that she enjoyed sustained improvement as a result of the numerous procedures she had done on her back.

Even assuming that the lack of objective medical evidence was a clear and convincing reason for the ALJ to find plaintiff's pain and symptom statements less than credible,  the lack of objective medical evidence to support subjective symptom allegations is not alone sufficient to discount a claimant's credibility.  Burch v. Barnhart, 400 F.3d 676,

---

[48]Plaintiff had radiofrequency ablation on October 18, 2010; October 25, 2010; June 21, 2011; and July 7, 2011.  Admin. Rec. at 499, 501, 630, & 633.  She reported "some benefit" after one treatment and Dr. Zaveri once noted that she had "excellent benefit" from this procedure.  Admin. Rec. at 638 & 641.

681 (9th Cir. 2005).  As will be discussed below, the other reasons given by the ALJ were not clear and convincing and thus the ALJ erred as to plaintiff's credibility.

The ALJ found plaintiff's statement that she needs to lay down five out of eight hours per day less than credible because "the records do not show atrophy or significant deconditioning.  She remains neurologically intact although she demonstrated positive straight leg raising."[49]  This was not a not a clear and convincing reason to find plaintiff's statements less than credible because the ALJ is providing her own medical opinion.  The ALJ expressed a medical opinion when she stated that the severity of plaintiff's condition was belied because "the records do not show atrophy or significant deconditioning."[50] Muscle atrophy or deconditioning is not necessarily required to corroborate the severity of plaintiff's condition.  See Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003) (court found that "the ALJ made his own medical conclusions" because the ALJ stated that  "[i]t would seem reasonable that disabling symptoms that allegedly preclude any significant walking, standing, sitting, lifting, and carrying would result in observable findings of atrophy or muscle tone loss").

The third reason given by the ALJ was that plaintiff testified that she had been allowed to perform her job while taking narcotic medication and had never been

---

[49]Admin. Rec. at 26.

[50]Admin. Rec. at 26.

reprimanded or counseled about the quality of her work.  While plaintiff testified that she told her employer she was taking narcotic pain medication, she did not testified that she was never counseled or reprimanded for problems at work. Rather, she testified that towards the end of her employment she was counseled or reprimanded because she "sent an ambulance to Maricopa County Hospital instead of the Urgent Care."[51]  Plaintiff also testified that she was terminated because she could not perform her job duties due to the pain medication.[52] Thus, this was not a clear and convincing reason to find plaintiff's pain and symptom statements less than credible.

There is some discussion by the parties as to a statement made by the ALJ that plaintiff "was able to perform some of the instrumental activities of daily living at home, including cooking and doing the dishes, for which she has to lean forward."[53]  Defendant argues that this was a clear and convincing reason to find plaintiff's pain and symptom testimony less than credible.  While an ALJ may consider a claimant's ability to perform daily activities when assessing credibility, the ALJ did not do so here.  Rather, in discussing Dr. Ahmed's opinion, the ALJ noted that plaintiff told Dr. Ahmed that her pain was a 10/10

---

[51]Admin. Rec. at 44.

[52]Admin. Rec. at 43.

[53]Admin. Rec. at 26.

but she was independent as to personal care and could do some cooking and the dishes.[54]

But, the ALJ did not find plaintiff's pain and symptom statements less than credible because of plaintiff's ability to perform daily activities.

Because the ALJ erred in finding plaintiff's pain and symptom statements less than credible, the court must consider whether to remand this matter for further proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id.

"[T]he Commissioner must accept, as a matter of law, a claimant's subjective pain testimony if the ALJ fails to articulate sufficient reasons for refusing to credit it." Vasquez, 572 F.3d at 593. This "credit-as-true" rule applies only "to cases 'where there are no

---

[54]Admin. Rec. at 26.

outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited.'" Id. (quoting Varney v. Sec. of Health and Human Srvcs., 859 F.2d 1396, 1401 (9th Cir. 1988)).   Here, there are no outstanding issues that must be resolved and it is clear from the record that the ALJ would be required to award benefits if plaintiff's pain and symptom testimony is credited as true.  The vocational expert testified that if plaintiff's testimony were accepted, particularly the testimony that she had to lay down five out eight hours per day, then there would be no work that plaintiff could perform.[55]  Thus, a remand for an award of benefits is appropriate in this case.  See Lingenfelter, 504 F.3d at 1041 n.12 ("Further proceedings are unnecessary because the ALJ did not provide a legally sufficient basis for rejecting Lingenfelter's testimony, which alone establishes that he is entitled to benefits").

Conclusion

Based on the foregoing, the decision of the Commissioner is reversed, and this matter is remanded for an award of  benefits.

DATED at Anchorage, Alaska, this 4th day of February, 2014.

/s/ H. Russel Holland
United States District Judge

---

[55]Admin. Rec. at 74.